# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| G. & S. MANAGEMENT CORPORATION ) | |
| d/b/a AUTOSERV OF TILTON ) | |
| ) | |
| **Plaintiff,** ) | |
| v. ) | CASE NO. |
| ) | |
| CARS.COM, INC. ) | |
| ) | **JURY DEMANDED** |
| **Defendant.** ) | |

## **VERIFIED COMPLAINT**

Now comes, Plaintiff, G. & S. Management Corporation d/b/a AutoServ of Tilton ("Plaintiff"), by and through its attorneys, and for its Verified Complaint against Defendant, Cars.com, Inc. ("Defendant"), states as follows:

## **INTRODUCTION**

1. This is an action for damages brought by Plaintiff alleging that Defendant violated the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* (the "Consumer Fraud Act"), and committed other common law torts. Plaintiff also alleges claims related to a written contract between the parties. Plaintiff seeks $500,000.00 in actual damages.

## **JURISDICTION AND VENUE**

2. This Court's jurisdiction arises under 28 U.S.C. § 1332, and supplemental jurisdiction for the state law claims is afforded under 28 USC § 1367. Venue is proper because Defendant transacts business in this district and the contract between the parties establishes the forum and the venue in Chicago, Illinois.

## THE PARTIES

3. Plaintiff is a New Hampshire corporation having a principal office at 40 East Main Street, Tilton, New Hampshire 03276. At all material times hereto, Plaintiff was a "person" as that term is defined under 815 ILCS 505/1(c).

4. Defendant is a Delaware corporation, with headquarters in Chicago, Illinois and a principal place of business at 300 South Riverside Plaza, Suite 1000, Chicago, Illinois 60606.

## FACTUAL ALLEGATIONS

5. Plaintiff is a franchised automobile dealer operating in and around Tilton, New Hampshire.

6. In approximately 2011, Plaintiff met with one of Defendant's sales representatives, Mr. Derrick Lachance ("Mr. Lachance").

7. During this meeting, Mr. Lachance represented to Plaintiff that Defendant had built the "best mousetrap," which would enable the dealership to market its vehicles over the internet in a cost-effective manner.

8. Mr. Lachance represented to Plaintiff that the success of its electronic marketing services would be measured through two (2) primary metrics: (1) the number of times one of Plaintiff's vehicles was seen by a consumer on a "search result page" ("SRP"); and (2) the number of times one of Plaintiff's vehicles was seen by a consumer on a "vehicle detail page" ("VDP").

9. Mr. Lachance represented to Plaintiff that the use of Defendant's services would enable Plaintiff to maximize exposure and gain the most SRPs and VDPs possible.

10. Mr. Lachance further represented that the SRP and VDP data would be based on actual user data captured by Defendant, and that this actual user data would be accurately reported to Plaintiff.

11. Plaintiff relied on these representations, and based on the representations, entered into a contractual relationship with Defendant.

12. On or about May 30, 2012, Plaintiff renewed this relationship and executed a standard form agreement with Defendant.

13. This standard form agreement required Defendant to provide certain computerized services to Plaintiff.

14. As a portion of the services received from Defendant, Plaintiff was given access to a computerized display, or a "dashboard," which allowed Plaintiff to view the status of the vehicles it placed for sale on the Cars.com website.

15. This "dashboard" also allowed Plaintiff to view the two (2) primary metrics it used to evaluate the efficacy of Defendant's electronic marketing, i.e., SRPs and VDPs. Defendant intended Plaintiff to rely on the SRP and VDP data captured and compiled by Defendant and communicated to Plaintiff via the "dashboard."

16. These two (2) metrics enabled Plaintiff to place a monetary value on its listed inventory with higher SRP models and higher VDP vehicles carrying higher prices.

17. Plaintiff engaged Defendant for its services based on Defendant's representations that its SRP and VDP metrics were accurate and easily accessible to Plaintiff.

18. Over the course of the next five (5) years, Plaintiff's contract with Defendant was renewed on no less than three (3) separate occasions.

3

19. At the time of the original contract, and on each of its renewal dates, sales representatives of Defendant made material representations to Plaintiff concerning the accuracy, quality and quantity of SRPs and VDPs captured by the Cars.com website.

20. Defendant's representations convinced Plaintiff to perpetuate the contractual relationship and Plaintiff routinely relied on and utilized SRP and VDP data to assist in making price determinations.

21. Over the same course of time, Plaintiff paid Defendant approximately $377,000.00, and the monthly invoices increased from approximately $2,380.00 to $8,230.00.

22. Plaintiff accepted these increased fees based on its belief that it was obtaining actual and accurate SRP and VDP information from Defendant. Plaintiff relied on the SRP and VDP data provided by Defendant to price, and ultimately sell, its vehicles.

23. In August of 2017, Plaintiff was preparing to meet with one of Defendant's employees, Mr. Bob Nagri ("Mr. Nagri"), to discuss the charges Defendant was attempting to levy against Plaintiff.

24. Prior to this meeting, Plaintiff reviewed the SRP and VDP data available through the "dashboard" of the Cars.com website.

25. Plaintiff then compared that data to the SRP and VDP data available from a non-competing information technology vendor, VAuto.

26. After comparing the data, Plaintiff discovered a marked discrepancy between the data published by Defendant and the data available from VAuto.

27. This discrepancy was especially alarming because the data obtained from VAuto was supposed to be directly drawn from the Cars.com website.

28. On August 24, 2017, Plaintiff met with Defendant's employees, Mr. Nagri and Ms. Christine Bishop ("Ms. Bishop").

29. Defendant's purpose in attending this meeting was to attempt to justify certain proposed price increases.

30. Mr. Nagri began this meeting by reviewing the SRP and VDP data compiled by Defendant.

31. After he presented certain information, Plaintiff informed him of the large discrepancy between the numbers he was reporting and the numbers available from VAuto.

32. Thereafter, Mr. Nagri was directly asked to explain this discrepancy.

33. Mr. Nagri could not explain this discrepancy.

34. After meeting with Defendant's agents, Plaintiff was left with one basic conclusion: Defendant was artificially inflating its SRP and VDP data in an attempt to drive up the price for its services.

35. Shortly after this meeting, Plaintiff was unable to access traffic reports from the Cars.com "dashboard" and could not provide additional data to substantiate its claims. Defendant removed the SRP and VDP metrics from the Cars.com "dashboard."

36. To date, and despite repeated demands, Defendant has failed to satisfactorily explain the known SRP and VDP discrepancies.

37. Shortly after Plaintiff met with Defendant's employees, Defendant published an electronic notice through its computerized services stating that the SRP and VDP data previously supplied by Defendant had been affected by "BOT traffic." A true and correct copy of this Notice is attached hereto as **Exhibit A.**

38. Plaintiff understood this to mean that Defendant had located certain robotic "BOT" activity. Upon information and belief, this "BOT activity" created fake click-through traffic and artificially inflated the SRP and VDP data being given to Plaintiff and Defendant's other customers.



39. This notice solidified Plaintiff's belief that the SRP and VDP data supplied by Defendant has been artificially inflated.

40. On September 13, 2017, Plaintiff sent formal notice of its claim to Defendant. A true and correct copy of this demand is attached hereto as **Exhibit B.**

41. On October 6, 2017, Defendant responded to Plaintiff's claims by denying all liability.

42. After reviewing Defendant's denial and the evidence available to it, Plaintiff remains convinced that Defendant either intentionally and/or negligently misrepresented the

6

accuracy, quality and quantity of the SRP and VDP information provided to Plaintiff and bears legal responsibility for those intentional and/or negligent misrepresentations.

43. As a result thereof, the instant suit was filed.

## COUNT 1
## VIOLATION OF THE ILLINOIS CONSUMER FRAUD ACT

44. Plaintiff restates and realleges all the foregoing paragraphs as if fully rewritten at length herein.

45. Plaintiff is a "person" as defined under the Consumer Fraud Act.

46. The Consumer Fraud Act makes it unlawful for a defendant to employ any deception, fraud, false pretense or false promise.

47. The Consumer Fraud Act also makes it unlawful for a defendant to conceal, suppress or omit a material fact with the intent that others rely on the concealment, suppression or concealment of such material fact.

48. The facts supporting this case show that Defendant perpetrated a deceptive act or practice, which occurred in the course of its trade.

49. The specific practice which Defendant engaged in was the knowing provision of false and/or inaccurate SRP and VDP data, upon which Plaintiff was intended to rely.

50. Plaintiff relied on the false and/or inaccurate data, causing Plaintiff to continuously renew Defendant's services, make numerous pricing errors, delay or prevent the sale of certain inventory and increase floor plan expenses.

51. Defendant's acts and/or omissions resulted in actual damages to Plaintiff.

52. Plaintiff's damages arose directly from the false and inaccurate SRP and VDP data received from Defendant.

53. Under the Consumer Fraud Act, Plaintiff may recover both compensatory and punitive damages.

54. In this case, Plaintiff demands recovery of its actual damages in the amount of $500,000.00, and punitive damages in the amount of $1,500,000.00.

55. In addition to permitting the recovery of actual and punitive damages, the Consumer Fraud Act also authorizes the recovery of reasonable attorney's fees.

56. Plaintiff has incurred and will continue to incur reasonable attorney's fees in this matter and seeks their recovery herein.

## COUNT 2
## NEGLIGENT MISREPRESENTATION

57. Plaintiff restates and realleges all the foregoing paragraphs as if fully rewritten at length herein.

58. The facts underlying these claims demonstrate that Defendant repeatedly made knowingly false statements of material fact concerning the accuracy of the SRP and VDP data provided to Plaintiff.

59. At the time Defendant made these statements and/or provided this information, it was under a duty to speak truthfully.

60. Defendant's statements were made carelessly and/or Defendant was negligent in ascertaining the truth of its statements.

61. Defendant's statements were made with the intent to induce Plaintiff to enter into and remain contractually bound to Defendant.

62. Plaintiff relied on the purported truth of Defendant's statements.

63. Defendant's false statements damaged Plaintiff as set forth herein.

## COUNT 3
## COMMON LAW FRAUD

64. Plaintiff restates and realleges all the foregoing paragraphs as if fully rewritten at length herein.

65. Defendant's statements concerning the accuracy of the SRP and VDP data provided to Plaintiff were false statements of material fact.

66. These false statements were made on a regular and recurring basis throughout the term of the parties' contract.

67. These false statements began at the inception of the contract and continue to the present day.

68. These false statements were made in the form of electronic data displayed on the "dashboard" made available to Plaintiff through Defendant's computerized services.

69. Additional false statements were made orally by Defendant's employees, *e.g.*, Mr. Lachance in 2011 and Mr. Nagri in August 2017.

70. At the time these statements were made, Defendant knew or should have known that they were false and that the information being reported to Plaintiff was false.

71. Defendant intended for its statements concerning the accuracy of the SRP and VDP data to induce Plaintiff to enter into and remain contractually bound to Defendant.

72. Plaintiff relied on the truth of the statements made by Defendant.

73. Plaintiff's damages resulted directly from reliance on Defendant's statements.

## DAMAGES

74. Plaintiff restates and realleges all the foregoing paragraphs as if fully rewritten at length herein.

75. **Actual Damages.** As a result of Defendant's actions, Plaintiff is entitled to actual damages in the amount of $500,000.00.

76. **Exemplary Damages.** As a result of Defendant's intentional conduct, Plaintiff is entitled to recover no less than three (3) times the amount of its actual damages or $1,500,000.00.

77. **Attorney's Fees**. Plaintiff made written demand on Defendant more than thirty (30) days prior to filing suit. Defendant refused to honor Plaintiff's demand. Pursuant to the Consumer Fraud Act and other statutory authority, Plaintiff is entitled to recover the reasonable and necessary attorney's fees incurred in the prosecution of this action including any appeal therefrom.

78. **Interest.** Plaintiff is entitled to recover pre-judgment and post-judgment interest at the maximum applicable rate.

## CONDITIONS PRECEDENT

79. Plaintiff has fully performed all conditions precedent prior to the institution of this suit.

## PRAYER

WHEREFORE, Plaintiff, G. & S. Management Corporation d/b/a AutoServ of Tilton, prays for judgment against Defendant as follows:

A. Actual damages in the amount of $500,000.00;

B. Exemplary damages in the amount of $1,500,000.00;

C. Reasonable and necessary attorney's fees;

D. Pre-judgment and post-judgment interest at the maximum rate;

E. Costs of suit; and

F.	All such other and further relief that this Court deems just and appropriate.

## VERIFIED COMPLAINT

I have reviewed all of the above facts of this complaint and verify that they are correct and accurate.

>	/s/ Dennis Gaudet
>	Dennis Gaudet
>	CEO of G&S Management, Inc.

## JURY DEMAND

Plaintiff demands a trial by jury as to all issues triable thereto.

>	/s/ Matthew C. Wasserman
>	Matthew C. Wasserman

>	Respectfully submitted,
>
>	/s/ Matthew C. Wasserman
>	**Matthew C. Wasserman (ARDC# 6287638)**
>	*mcwasserman@gct.law*
>	**Gillian G. Lindsay (ARDC# 6298511)**
>	*gglinday@gct.law*
>	**Golan Christie Taglia LLP**
>	70 West Madison Street, Suite 1500
>	Chicago, IL 60602
>	(312) 263-2300
>	*Counsel for Plaintiff*
>
>	**Robert A. Poklar (OH Bar No. 0015685)**
>	*RPoklar@westonhurd.com*
>	**Matthew C. Miller (OH Bar No. 0084977)**
>	*MMiller@westonhurd.com*
>	**Daniel A. Richards (OH Bar No. 0059478)**
>	*DRichards@westonhurd.com*
>	**Weston Hurd LLP**
>	1301 East 9th Street, Suite 1900
>	Cleveland, OH  44114-1862
>	(216) 241-6602 / (216) 621-8369 (fax)
>	(Applying for *pro hac vice*)